Filed 10/5/23  P. v. Jordan CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES JORDAN,<br><br>        Defendant and Appellant. | B313749<br><br>(Los Angeles County<br>Super. Ct. No. A294099) |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Charles Jordan (defendant) appeals the trial court's order denying his petition for resentencing filed pursuant to Penal Code section 1172.6.[1]  Concluding there was no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    The Underlying Crime

Just before midnight on a Monday in February of 1973, defendant, George Monroe Clark (Clark), and Frederick Dwayne Nelson (Nelson) were hanging out in the Belmont Bar in downtown Los Angeles.  Nelson had a knife.  Clark was a pimp, and JoAnn Fay (Fay) was one of his prostitutes.

Frank Zion (Zion) walked into the bar and had cash visibly overflowing from his pockets.  Zion was noticeably drunk.  After Zion told Fay he wanted a "date" with her and peeled off $130 to give her from his wad of cash, Zion led Fay to the Rosslyn Hotel, a then-seedy hotel across the street from the bar.  Defendant, Clark, and Nelson waited a few minutes, and then followed.  Before they left, however, one of them grabbed a beer bottle and concealed it in a T-shirt.

Back in Zion's room at the hotel, Zion and Fay had sex.

---

[1]    When defendant filed his petition, the relevant resentencing statute was numbered section 1170.95.  Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  For simplicity, we refer to the section by its new numbering.

All further statutory references are to the Penal Code unless otherwise indicated.

2

Mere minutes after the sex ended and while Zion was still laying on the bed, defendant, Clark, and Nelson barreled into Zion's hotel room with enough force to splinter the door jamb and knock down Fay, who was near the door. Defendant was the first of the three assailants through the door. They let Fay exit the room and then, as Zion lay on the bed, all three men rushed him and unleashed a hail of punches. One of the three men pulled out the by-that-time broken beer bottle and plunged its jagged edge into Zion's neck, severing his jugular vein and causing his lifeblood to rapidly flood the bedsheets. Zion had no defensive wounds.

Defendant, Clark, and Nelson then ransacked the hotel room, taking Zion's wallet and the other wads of cash. They left the room with Zion bleeding out on the bed, and returned to the bar to "split" the loot.

## II. Prosecution, Conviction, and Appeal

The People charged defendant, Clark, and Nelson with robbery (§ 211) and murder (§ 187), and further alleged that each defendant intentionally inflicted great bodily injury. The jury convicted defendant of first degree robbery and first degree murder, and found true the further allegation.

The trial court imposed a sentence of life for the murder conviction, but stayed the sentence for the robbery conviction.

Defendant's conviction and sentence were affirmed on appeal.

## III. Petition to Vacate Under Section 1172.6

In January 2019, defendant filed a petition for resentencing under section 1172.6. After appointing counsel to represent defendant, and after receiving a response from the People and a further brief from defendant, the trial court in February 2021

3

issued an order to show cause and set the matter for an evidentiary hearing.

On May 14, 2021, the trial court held an evidentiary hearing. At that hearing, the court stated that it had read the transcripts from the original trial. The People also introduced a 2009 comprehensive risk assessment presented to the Board of Parole Hearings. Defendant introduced no new evidence. A few days after the hearing, defendant filed a supplemental brief contesting the admissibility of the 2009 assessment.

On May 28, 2021, the trial court issued a 13-page order denying defendant's petition. The court reasoned that defendant was not entitled to relief under section 1172.6 for two reasons—namely, (1) defendant had admitted in the 2009 assessment to being the "actual killer" (that is, the one who plunged the beer bottle into Zion's neck); and (2) the evidence from the original trial supports an independent finding, beyond a reasonable doubt, that defendant was a major participant in the robbery who acted with reckless indifference to the value of human life.

## IV. Appeal

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his petition for resentencing because the court erred in finding that (1) he was the "actual killer" because the sole basis for that finding was the 2009 assessment, which was improperly admitted into evidence; and (2) he was a major participant who acted with reckless indifference to human life because (a) there is insufficient evidence that he acted with reckless indifference, and (b) the court never considered his relative youth. As we explain below, because the trial court's independent finding that

4

defendant was a major participant who acted with reckless indifference is valid, we have no occasion to address his challenge to the evidence underlying the "actual killer" finding.

## I.     Substantial Evidence Supports the Finding That Defendant Was a Major Participant Who Acted with Reckless Indifference

### A.     *Pertinent law*

In 2018, our Legislature amended the definition of "murder" in our state to preclude a jury from "imput[ing]" the "malice" element of that crime "based solely on [a defendant's] participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1(g).) As amended, liability for murder is limited to persons (1) who are the actual killer; (2) who aided and abetted the actual killer in the murder (that is, who acted with the intent to kill); or (3) who were a major participant in the underlying felony that resulted in the killing, but only if they also acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e); e.g., *People v. Johns* (2020) 50 Cal.App.5th 46, 58-59.)

Section 1172.6 is the procedural vehicle by which persons convicted in now-final judgments can seek to vacate convictions that do not satisfy the now-current definition of "murder." Where, as here, a defendant files a facially sufficient petition and the record does not otherwise foreclose relief as a matter of law, the trial court must issue an order to show cause and convene an evidentiary hearing. (§ 1172.6, subd. (c).) At the hearing, the People have the burden of proving to the trial court, acting as an

5

independent factfinder, that a defendant is guilty of murder on a still-valid theory.  (§ 1172.6, subd. (d)(3).)

As pertinent here, the trial court found beyond a reasonable doubt that defendant was guilty under the still-valid theory that he was a major participant in the robbery that resulted in Zion's death and that he acted with reckless indifference to human life.  Defendant concedes that the court's finding that he was a major participant is supported by the record, but asserts that the finding that he acted with reckless indifference to human life is not.  As a threshold matter, defendant argues that we must engage in de novo review of the evidence presented at trial, including reevaluating the credibility of witnesses and drawing whatever inferences we find persuasive; for support, he cites *People v. Vivar* (2021) 11 Cal.5th 510.  However, *Vivar* itself confined its rule of independent review for testimony presented in transcripts (rather than through in-person testimony) to petitions under section 1473.7 (*id.* at pp. 527-528 & fn. 7); not surprisingly, and contrary to defendant's proclamation that the law on this point is "unsettled," the courts have uniformly rejected the argument defendant now advances (*People v. Clements* (2022) 75 Cal.App.5th 276, 301-302; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232-233; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 590-591).  We join that chorus.  As a result, our task is simply to assess whether "substantial evidence"—that is, ""evidence that is reasonable, credible, and of solid value""—supports the *trial court's* independent finding that defendant acted with reckless indifference.  (*People v. Nieber* (2022) 82 Cal.App.5th 458, 476.)  In so doing, we view the evidence in the

light most favorable to the court's finding, drawing all reasonable inferences in support of that finding.  (*Ibid.*)

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), our Supreme Court spelled out that a defendant acts with reckless indifference to human life when he ""knowingly engag[es] in criminal activities known to carry a grave risk of death.""  (*Banks*, at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157.)  This standard "has a subjective and an objective" component.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)  To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'"  (*Ibid.*, quoting *Banks*, at p. 801.)  The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, p. 617.)  To satisfy the objective component, the risk of death ""must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him . . . , its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation.""  (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life.  "No one of these considerations is necessary, nor is any one of them necessarily

7

sufficient" (*Banks*, *supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins*, *supra*, 9 Cal.5th at p. 677). The considerations are: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Ibid.*, citing *Clark*, *supra*, 63 Cal.4th at pp. 618-623.)

### B.  *Analysis*

Substantial evidence supports the trial court's finding that defendant acted with reckless indifference to human life.

The court's finding of reckless indifference is supported by substantial evidence when it is viewed in its totality. Defendant and two other men went to a hotel room that they knew was occupied by a drunk man who had just had sex and a prostitute who worked for one of them. They brought weapons—a knife and a broken beer bottle that could not be easily concealed. They burst through the hotel room's door in order to rob the man, and all immediately moved to where he was on the bed in order to beat him. This conduct is equivalent to a home invasion robbery, a crime that carries with it a higher risk of violence. (*People v. Garcia* (2020) 46 Cal.App.5th 123, 146-148.) What is more, defendant concedes he was a major participant in this robbery; this is further confirmed by his role as the first one to enter the

hotel room after they busted the door. Defendant's aggravated role is further evidence of reckless indifference. (*Id.* at p. 147 ["the greater the defendant's participation in the [underlying] felony . . . , the more likely he or she acted with reckless indifference to human life"].)

The court's finding of reckless indifference is further confirmed by examining the individual *Banks* and *Clark* considerations.

First, and assuming for these purposes that defendant was not the assailant who stabbed Zion with the beer bottle, defendant or one of his cohorts *brought* the broken bottle into the hotel room and, given the unusual size and shape of a broken beer bottle, the trial court could reasonably infer that defendant saw the bottle as the men walked over from the bar. Defendant responds that there was no evidence that he or one of his cohorts brought the bottle with them, no evidence *which of them* brought it, and no evidence that defendant told anyone to stab Zion. These arguments are incorrect or irrelevant: Fay testified that there was no bottle in the room when she was with Zion, giving rise to the reasonable inference that the assailants brought it with them; for purposes of showing defendant's knowledge that a weapon would be used, it does not matter which one of them brought the bottle; and in assessing *recklessness*, it does not matter which defendant *intended* the murder.

Second, defendant was present in the hotel room; indeed, he was one of the three men punching Zion at the time one of them plunged the beer bottle into Zion's neck. Defendant argues that the crime unfolded so quickly he had no time to intervene to stop the crime, but the record does not support this assertion given that all three men were ostensibly within arm's reach of

9

one another while simultaneously beating Zion; it is reasonable to infer defendant could have reached out to either cohort the moment that cohort pulled out the broken beer bottle.

Third, defendant also could have aided Zion once he was stabbed; instead, he fled and returned to the bar with the others to count their loot. Admittedly, the attack on Zion happened quickly once the three men barged into the room, so there was not an extended period for reflection *after that point in time*, but the fact that the men had planned to proceed to *immediately* beat Zion only tends to exacerbate—not reduce—the danger to human life.

Fourth, although there is no direct evidence that defendant was aware of Nelson's or Clark's past propensity for violence, these men were not strangers to defendant (as Nelson was defendant's roommate), and the charged crime evinces a coordinated plan to follow a bar patron across the street to rob and kill him. Defendant's concession that the evidence supports a finding that he was a major participant in the robbery further supports his role in planning the crime—and hence his foreknowledge of their violence-based plan. What is more, defendant's lack of surprise following the crime implies that he knew that the attack would "go down" precisely as it did.

Lastly, defendant made no effort to minimize the risk of violence; instead, he was the first to burst into the hotel room and set upon Zion.

Defendant resists our conclusion with one further argument—namely, that a person's participation in an armed robbery is not enough to establish that he was a major participant who acted with reckless indifference to human life. Relatedly, he argues that this was just a "'garden-variety' armed

10

robbery." Defendant is correct that *mere* participation in an armed robbery is not enough to make every participant in the robbery someone who acts with reckless indifference (*In re Bennett* (2018) 26 Cal.App.5th 1002, 1026; *Banks*, *supra*, 61 Cal.4th at p. 810; *Clark*, *supra*, 63 Cal.4th at p. 616), but he seems to leap from that proposition to the conclusion that *no level* of participation is enough. But that is simply an incorrect statement of the law because it would mean that armed robbers are categorically immune from being major participants who act with reckless indifference to human life. By the same token, whether or not the robbery as a whole was a "garden-variety armed robbery" is irrelevant because what matters is *defendant's particular role* in *this particular* armed robbery. Defendant was not the getaway driver who waited around the corner while his cohorts robbed a liquor store after hours. Instead, defendant was one of the three robbers who followed a mutually agreed-upon plan to follow a bar patron across the street to his hotel room where they forced entry and proceeded to beat, rob, and kill him. For the reasons explained above, defendant's particular role in this particular robbery qualifies him as a major participant who was recklessly indifferent to human life.

## II. Consideration of Defendant's Relative Youth

In a series of decisions starting with *People v. Harris* (2021) 60 Cal.App.5th 939, the California courts have noted that a defendant's relative youth—which various statutes refer to as being under the age of 26 (§§ 3051, subd. (a)(1), 4801, subd. (c))—is relevant in assessing whether a defendant has satisfied the subjective component of the reckless indifference test. (*Harris*, at p. 960 [defendant's youth makes it "far from clear that [he] was

11

actually aware 'of [the] particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants'"]; *In re Moore* (2021) 68 Cal.App.5th 434, 453-454 ["a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life"]; *People v. Jones* (2022) 86 Cal.App.5th 1076, 1092-1093 [same].) *Harris*—the first in this line—was decided on February 16, 2021, which is *before* the May 2021 evidentiary hearing in this case. Because the parties cited defendant's age of 19 to the trial court, we may presume that the court was aware of *Harris* and hence aware of its need to "consider [defendant's] age and maturity level" when assessing whether defendant acted with reckless disregard. (Cf. *Jones*, at p. 1092 [concluding that presumption did not apply to section 1172.6 hearings held *prior to Harris*].)

Defendant resists this conclusion, urging that because his evidentiary hearing was held before *Moore* and *Jones*, we cannot presume the trial court was aware of the relevance of his relative youth. But *Jones* is to the contrary. Defendant further urges that the presumption that courts are aware of and apply the law only applies in "simplistic situations," but he cites no authority for this proposition and *Jones* itself does not adopt it. We also reject it. Our conclusion in this regard obviates the need to consider defendant's subsidiary argument that his counsel was constitutionally ineffective for not explicitly asking the court to consider his age.

12

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

 LUI


_____, J.

 ASHMANN-GERST


13